**Carol LOGAN, Individually, and as a Personal Representative of the Estate of Daxi Love, Appellant,**

v.

**PROVIDENCE HOSPITAL, INC., Appellee.**

**No. 98–CV–1095.**

District of Columbia Court of Appeals.

Argued Oct. 5, 1999.

Decided Aug. 2, 2001.

---

Joseph F. Cunningham, Alexandria, VA, for appellant.

Hugh W. Farrell, Columbia, MD, for appellee.

Before WAGNER, Chief Judge, and SCHWELB and RUIZ, Associate Judges.

RUIZ, Associate Judge:

This appeal raises the knotty problem whether a non-settling defendant has a right to a credit for a plaintiff's settlement with another defendant, complicated by a choice of law question. Appellant challenges an order of the Superior Court applying District of Columbia law and granting *pro tanto* reduction of a jury award in her malpractice case against Providence Hospital in the amount of a settlement in a related negligence case in Maryland against other defendants.

Appellant claims that the trial court incorrectly applied District of Columbia law in deciding whether to apply the Maryland settlement amount as a credit, and that under Maryland law appellee is not entitled to a credit for the settlement because appellee is not a joint tortfeasor with the Maryland defendants. Appellee argues, on the other hand, that the trial court correctly applied District of Columbia law, as the District has a greater interest than Maryland in the negligence action, and under District of Columbia law appellee is entitled to a *pro tanto* reduction in the amount of the settlement. We agree with appellant that Maryland law applies to the question whether the settlement of the Maryland action should be applied as a *pro tanto* credit against the jury verdict in the District of Columbia action. Under Maryland law, appellee is not entitled to such credit because there has been no determination that appellee and the Maryland defendants were joint tortfeasors. Therefore, we reverse and remand.

## I.

On July 19, 1992, Daxi Love was visiting a relative at the Days Inn Hotel at 2700 New York Avenue, Northeast. While swimming in the hotel pool, he experienced distress in the water, dropped below the surface, and swallowed some chlorinated water. Although there was a lifeguard on duty at the time of the incident, he did not respond until after Love had been pulled from the water by other patrons of the pool. While being administered cardio-pulmonary resuscitation, Love aspirated vomit into his lungs. However, he re-gained consciousness, was coherent, and was able to walk before being taken to Providence Hospital.

Love was treated at Providence Hospital for three and a half weeks. He was placed on a respirator under the care of Dr. Boisey O. Barnes. At the onset of his hospitalization, he was alert, responded to questions, was able to move his arms and legs, and wrote notes to communicate with those around him. During his treatment, Love developed pneumothorax, a condition in which the lungs develop tears in their walls. Evidence at trial showed that this life-threatening condition was caused by the hospital staff's sustained incorrect use of the respirator. Daxi Love died on August 13, 1992.

In March 1994, appellant, as personal representative of Love's estate and on her own behalf, brought a survival action and wrongful death action in Circuit Court for Montgomery County, Maryland, against Days Inn of America, Inc., 2700 New York Avenue Corporation, Winberg Management Company, and the Winberg Family Partnership (Maryland defendants). The following year, the case settled for a lump sum payment of $217,810 plus an annuity payable to Logan at $908/month for life with twenty years minimum.

In May 1994, two months after instituting suit against the Maryland defendants, appellant, as personal representative of her son's estate and on her own behalf, also brought survivor's and wrongful death [1] claims against Providence Hospital and Boisey O. Barnes, M.D. (District defendants), in Superior Court of the District of Columbia. A jury returned a verdict in favor of Logan and against Providence Hospital for $476,000.[2] Judgment was entered for Logan and against the hospital.

Providence Hospital then filed a Motion to Alter or Amend the Judgment, or, in the Alternative, for Relief from the Judgment, requesting that the court award a *pro tanto* credit as an offset to reflect the earlier settlement with the Maryland defendants. The trial court granted the Hospital's motion, reducing the final award to $116,000.[3] In its order, the trial court recognized that choice of law was central to its analysis. Applying the four-factor test of *District of Columbia v. Coleman,* 667 A.2d 811 (D.C.1995), the trial court determined that District of Columbia law should apply because the defendants' negligence, the plaintiff's residence, her son's injury, and the defendants' primary business all were centered in the District.

---

1. The wrongful death action filed in Maryland, as well as the subsequent one filed in the District of Columbia, was dismissed as time-barred by the District of Columbia's one-year statute of limitations.

2. The jury found that Dr. Barnes was negligent, but that his negligence was not a proximate cause of Love's death.

3. There was some disagreement at trial as to whether the net present value of the settlement was $360,000 or $357,000. An actuary provided an appraisal for the parties at $360,387. The trial court applied a $360,000. credit. Appellant challenges the application of a *pro tanto* credit, but does not dispute the amount of the credit on appeal.

Finding that "the injuries alleged by plaintiff in [the Maryland and D.C. cases] are factually and legally indistinguishable as against each defendant," the trial court applied the "single satisfaction rule" to reduce the jury verdict in favor of appellant in the amount of her settlement with the Maryland defendants. *See Berg v. Footer,* 673 A.2d 1244, 1249 (D.C.1996) (quoting *Snowden v. District of Columbia Transit Sys. Inc.,* 147 U.S.App.D.C. 204, 205, 454 F.2d 1047, 1048 (1971)).

## II.

Because they raise issues of law, we review de novo the trial court's decisions to apply District of Columbia law and its order granting a *pro tanto* credit. *See Berg,* 673 A.2d at 1247 (crediting judgments with proceeds of a settling defendant); *Coleman,* 667 A.2d at 816 (choice of law).

*Choice of Law*

■ Appellant argues that the trial court erred in granting the Hospital's motion to alter or amend the judgment because appellee is not entitled to a *pro tanto* credit under Maryland law, which should control in this case. She bases her argument on *Mozie v. Sears Roebuck Co.,* 623 A.2d 607 (D.C.1993), which holds that where a release is executed in Maryland, is governed by Maryland law and concerns an automobile accident that took place in Maryland, Maryland law applies (even where the defendant's negligence occurred

in the District of Columbia), to "the interpretation of a release entered in a proceeding in the Maryland courts under Maryland law." *Id.* at 617. The trial court mentioned, but did not discuss, *Mozie;* instead it relied on *Coleman,* which establishes a four-factor test to determine the law applicable to negligence actions: 1) the place of injury, 2) the place where the conduct causing the injury occurred, 3) the place of residence/incorporation/business of the parties, and 4) the place "where the relationship is centered." 667 A.2d at 816. Although we agree that the underlying negligence action against the hospital was properly tried under District of Columbia law, we also think that the effect and interpretation of the release should be decided under Maryland law.

■ In making a choice of law,
[w]hen both jurisdictions have an interest in applying their own laws to the facts of the case, "the forum law will be applied unless the foreign jurisdiction has a greater interest in the controversy."

*Id.* (quoting *Kaiser–Georgetown Community Health Plan, Inc. v. Stutsman,* 491 A.2d 502, 509 (D.C.1985)).

■ On balance, we conclude that Maryland has a greater interest in the effect of the release as it affects the right to a *pro tanto* credit. Maryland law provides for a *pro tanto* credit (not a *pro rata* credit, as in the District of Columbia)[4] to

---

4. Although we have debated the merits of *pro rata* credits for joint tortfeasors, *see, e.g., Paul v. Bier,* 758 A.2d 40 (D.C.2000); *id.* at 509 (Ruiz, J., concurring); *id.* at 53 (Schwelb, J., dissenting), we have clearly established that, under our law, there is a clear distinction between the nature and purpose of *pro tanto* and *pro rata* credits.

A *pro rata* credit against the verdict represents the nonsettling defendant's "right to contribution" from the settling defendant

when both have been found liable for the plaintiff's injuries. *Berg,* 673 A.2d at 1248. A *pro rata* credit, therefore, acts as "a substitute for the non-settling defendant's actual claim for contribution that persists after the dismissal of the principal claim against a settling defendant." *Id.* (quoting *Washington v. Washington Hosp. Ctr.,* 579 A.2d 177, 187 (D.C.1990)).... The *pro tanto* credit, on the other hand, is not premised on ensuring equity between joint tortfea-

effectuate the right of contribution between joint tortfeasors, unless the parties expressly provide for a greater amount. *See* MD.CODE ANN CTS. & JUD. PROC. § 3–1404 (1998 Repl.Vol.) ("a release ... reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid"); *Martinez v. Lopez*, 300 Md. 91, 476 A.2d 197, 202 (1984). Here, the trial court applied District of Columbia law, not to provide a *pro rata* credit based on contribution between joint tortfeasors, but to offset the settlement amount *pro tanto* based on the single satisfaction rule.[5] In this case, even assuming that the Maryland settlement and the District of Columbia jury verdict were intended to compensate for the same injury, granting a *pro tanto* credit pursuant to our single satisfaction rule has the effect of awarding to the nonsettling defendant a credit to which it would not be entitled under Maryland law. See discussion *infra*. Although we have

refrained from a firm rule, *see Berg*, 673 A.2d at 1250, we have trumped the single satisfaction rule, and permitted a plaintiff to recover in excess of a jury award, in order to provide equity as between joint tortfeasors under our law. *See id.* at 1257. As we have been flexible in allowing the single satisfaction rule to give way to the proper application of the right of contribution, and Maryland law is clear that there is no right of contribution in this case, and thus, no *pro tanto* credit should be applied in this situation, we think Maryland law should prevail over applying the District's single satisfaction rule to these facts. *Cf. Lamphier*, 524 A.2d at 731 (applying District of Columbia law to effect of release because "Maryland has little if any interest in applying its general release rule to limit liability of a District of Columbia corporation" and "the District has a strong and recognized interest in determining the liability of District health care corporations for negligence attributable to them that occurs within the District").[6]

■ Further, as in *Mozie*, the issue of the interpretation of the release and set-

---

sors, but is based on the rationale that the plaintiff is entitled to no more than the loss actually suffered. *See Berg*, 673 A.2d at 1248–49.
*Paul*, 758 A.2d at 50–51.

5. The trial court expressly did not credit the settlement proceeds against the jury verdict to give effect to a right of contribution, but determined that the injuries were "factually and legally indistinguishable" as alleged in the complaints filed against Days Inn in Maryland and Providence Hospital in the District. There has not been a finding, however, that the negligence of Days Inn was a proximate cause of Daxi Love's death. Appellant contends that even if District of Columbia law applies, appellee is not entitled to a *pro tanto* credit because the single satisfaction rule applies only where the tortfeasors are jointly liable, and the evidence produced at trial supports that Days Inn and Providence Hospital were successive, not joint, tortfeasors and that

each one caused different and separable injuries. In light of our disposition, we do not address the adequacy of the trial court's determination, based on the pleadings, that the injuries sustained by Love at the hands of the Maryland and District defendants were the same and compensated by the settlement. *See Lamphier*, 524 A.2d at 735 & n. 12 (noting the basis for liability of one tortfeasor for damages caused by a successor tortfeasor and that question of whether settlement amount with former was intended to compensate for the injury caused by the latter is "ordinarily a question of fact").

6. Where there is a right of contribution between joint tortfeasors, Maryland law does not permit a plaintiff's recovery from settling and non settling defendants to exceed a jury verdict. *See Martinez*, 476 A.2d at 203–04. As noted in the text, however, this case does not meet the prerequisites for a right of contribution.

tlement executed in connection with the Maryland action should be governed by Maryland law. Here, as in *Mozie,* the settlement was signed and executed "in the course of legal proceedings in a court in Maryland" and provides that its terms are to be governed by Maryland law. *Mozie,* 623 A.2d at 617. The significant difference between this case and *Mozie* appears to be that in *Mozie* the automobile accident occurred in Maryland (even though the negligence was in the District of Columbia), while in the present case both the hospital's negligence and Love's injuries took place in the District of Columbia. As the aspects of the lawsuit most connected to the District of Columbia, the appellee's negligence and liability, were tried under District of Columbia law, we believe they are in the main irrelevant to a determination whether Maryland law should apply to the distinct issues of the effect and interpretation of the release executed in Maryland, governed by Maryland law, pursuant to a Maryland court proceeding. These are separate issues; different law may apply to different issues in a lawsuit. "We are not bound to decide all issues under the law of a single jurisdiction; choice of law involves examination of the various jurisdictional interests as applied to the various distinct issues to be adjudicated." *Coleman,* 667 A.2d at 816. We therefore turn to consider Maryland law.

*Pro tanto credit*

Under Maryland's Uniform Contribution Among Tort–Feasors Act,

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other tort-feasors unless the release so provides; but reduces the claim against the other tort-feasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.

MD. ANN., CTS. & JUD. PROC. § 3–1404 (1998 Repl.Vol.) As we said in *Mozie,* the Maryland statute "makes clear" that "the non-settling defendant has a right, unless the release provides to the contrary, to seek contribution from the settling defendant or non-party *who is found liable as a joint tortfeasor* or where the release provides that the settling defendant shall be deemed to be a joint tortfeasor." 623 A.2d at 617 (emphasis added). *In Mozie* there were two defendants, one who settled and one who did not, and plaintiff signed a release requiring a judicial determination that the settling party was a joint tortfeasor before the non-settling defendant would be entitled to contribution in the amount of a *pro rata* share against any judgment in the plaintiff's favor. *See id.* at 616. As no such subsequent judicial determination was made, the two defendants were not joint tortfeasors, and the non-settling defendant was not entitled to contribution from the settling defendant. *See id.* at 618.

■ Applying Maryland law to this appeal, we have no doubt that if Providence Hospital had been sued in Maryland, the court would not apply a *pro tanto* credit against the jury's verdict in the amount of appellant's settlement with Days Inn. For Providence Hospital to be entitled to such a credit, the Maryland statute requires that it be a joint tortfeasor with Days Inn. *See Collier v. Eagle–Picher, Inc.,* 86 Md. App. 38, 585 A.2d 256, 265 (1991) (holding that "issues of reduction and contribution based on settlements entered into by plaintiffs are governed by the Act and that only releases given to joint tortfeasors will give rise to rights of reduction and contribution"). "The statute defines joint tortfeasors as 'two or more persons jointly or severally liable in tort for the same injury

to person or property, whether or not judgment has been recovered against all or some of them.'" *Id.* (quoting MD. ANN.CODE ART 50, § 16(a) (Supp.1991)). In this case, there has been no determination or stipulation that the Maryland defendants and Providence Hospital were joint tortfeasors. See *supra* note 5. The Settlement Agreement was entered into in Maryland on March 5, 1995, well *after* appellant had filed her lawsuit against Providence Hospital in D.C. in May 1994, suggesting that the parties were aware that appellant was proceeding in two different tribunals against separate defendants. "[I]t is clear that the Maryland courts will give effect to the language in the parties' release." *Mozie,* 623 A.2d at 618. The Settlement Agreement not only refers to the Maryland defendants as the sole releasees, but also unequivocally states that it "is a compromise of a doubtful and disputed claim, and the payments are not to be construed as an admission of liability on the part of the [Maryland defendants], by whom liability is denied." In *Swigert v. Welk,* 213 Md. 613, 133 A.2d 428, 431 (1957), the Maryland Court of Appeals interpreted the statute as making it "clear that a denial of liability will not" suffice to establish liability as a joint tortfeasor. *See Mozie,* 623 A.2d at 618. *Cf. Collier,* 585 A.2d at 266 (noting that where an agreement provides that the "releasee is to be regarded as a joint tortfeasor, even though he may disclaim liability ... the releasee's status as a joint tortfeasor is contractually determined"). On this record, therefore, Providence Hospital has not shown a necessary prerequisite for a *pro tanto* credit as a right of contribution under Maryland law, that it is a joint tortfeasor with the Maryland defendants.

*Reversed and Remanded.*