**Theresa E. JOHNSON**

v.

**William Andrew HEBB, Jr.**

**Civ. No. PN–89–1227.**

United States District Court,
D. Maryland.

Feb. 5, 1990.

James A. Kenney, III and Bryan T. Dugan, Kenney and Lacer, P.A., Lexington Park, Md., for plaintiff.

William Andrew Hebb, Jr., Baltimore, Md., pro se.

## OPINION AND ORDER

NIEMEYER, District Judge.

This case presents the question whether the "slayer's rule" prevents a beneficiary

of a life insurance policy from recovering the proceeds of the policy when the beneficiary has killed the insured.

The defendant William Andrew Hebb, Jr. killed his wife, Sonya E. Hebb, on March 18, 1988. At the time of her death, Sonya Hebb was an employee of the federal government and was insured under Group Policy Number 17,000–G issued by Metropolitan Life Insurance Company. She had designated that her husband receive eighty percent of the proceeds of the policy payable on her death and that her mother, Theresa E. Johnson, receive the remaining twenty percent. The policy provided for a total payment of $59,200.

William Hebb pleaded guilty to felony murder and a handgun violation in the killing of his wife and is presently serving a sentence of life plus 20 years in state prison. Relying on the case of *Ford v. Ford*, 307 Md. 105, 512 A.2d 389 (1986), and its precursors, which describe the scope and application of the slayer's rule in Maryland, Theresa Johnson, as the only other heir to Sonya Hebb, made claim to the total proceeds of the policy. The law of Maryland requires that even though a beneficiary is convicted of criminal homicide, the trier of fact in the civil case applying the slayer's rule must determine independently whether the homicide was felonious and intentional. Because of the conflicting claims of William Hebb and Theresa Johnson, Metropolitan Life Insurance Company filed this interpleader action, relying on diversity jurisdiction.

After all interested parties had been served with the complaint for interpleader, the Court issued an Order of Interpleader which discharged Metropolitan Life Insurance Company from this action; received $63,024.39 (which is the face amount of the policy with interest) into the registry of the Court; and realigned the parties to appoint Theresa Johnson as the plaintiff and William Hebb as the defendant. Theresa Johnson has now filed a motion for summary judgment making claim to the full proceeds of the policy. William Hebb, pro se, filed an answer and a response to the complaint for interpleader in which he stated

his position, but he did not file a response to the motion for summary judgment. When his response was past due, the Court wrote to him on November 27, 1989, advising him in part as follows:

> On October 30 Theresa Johnson filed a motion for summary judgment, a copy of which has been sent to you. Under the rules, you must respond to this motion within fourteen days, and if you wish to raise any factual question this must be done by way of affidavit. Because you are pro se, I will give you at least twenty additional days within which to file your response to the motion for summary judgment. Accordingly, you should have a response filed with the Clerk of the Court on or before December 18, 1989. If I do not receive the response by that date, I will rule on the papers as presented.

No response was submitted by Mr. Hebb. Accordingly, the Court will rule on the papers that have been filed and will assume that Mr. Hebb could and would file an affidavit supporting the position stated in his answer and response to the interpleader action.

The uncontradicted record shows that on November 1, 1988, Hebb pleaded guilty of felony murder and a handgun violation and was sentenced by Judge William A. Missouri to life plus twenty years. Before sentencing, Judge Missouri conducted a proceeding at which Hebb testified and before which his attorney made the following opening statement:

> ... it would be ludicrous having pled William Andrew Hebb guilty to murder, and the use of a handgun, and then arguing he didn't mean it, or he didn't mean it when he fled. It's obvious that William Hebb shot his wife in the head and killed her.

Thereafter, in the course of the proceeding Hebb took the stand and testified about the facts surrounding the killing of his wife. Even though the facts that he recited are not controverted in this record, Hebb did state in his papers that he should be "retried because evidence did not convict him of killing the deceased Sonya E. Hebb."

He goes on to state that which raises the critical issue for resolution here:

> The beneficiary is not denied recovery by reason of his act causing the death of the insured where such act was unintentional or not felonious, or where there is some doubt whether the death was felonious or intentional.

Hebb also argues that the principles recited in *Ford, supra,* apply only to the proceeds of a will, whereas this case involves the proceeds of a life insurance policy.

Although most of the states have adopted "slayer's" statutes which preclude a killer from being enriched by reason of his criminal conduct, *see Ford,* 307 Md. at 125–27, 512 A.2d 389, Maryland's rule is adopted by judicial decision. It evolved from a trilogy of cases that applied the equity principles that "no one shall be permitted to profit by his own fraud, to take advantage of his own wrong, to found any claim upon his own iniquity, or to acquire property by his own crime." *Price v. Hitaffer,* 164 Md. 505, 506, 165 A. 470 (1933). *See also Schifanelli v. Wallace,* 271 Md. 177, 188, 315 A.2d 513 (1974); *Chase v. Jenifer,* 219 Md. 564, 567, 150 A.2d 251 (1959). As now formulated in Maryland, one who kills feloniously and intentionally, and his heirs or representatives through him, may not profit by taking any portion of the estate or the life insurance of the one he killed. *Ford,* 307 Md. at 109, 111–12, 512 A.2d 389; *Chase,* 219 Md. at 567, 150 A.2d 251. If, however, the homicide is unintentional, even if grossly negligent so as to justify a manslaughter charge, the slayer's rule will not apply to preclude recovery from the estate or a policy of insurance of the deceased. *Schifanelli,* 271 Md. at 188–89, 315 A.2d 513.

Whether a homicide is felonious and intentional will be determined in civil court, and the burden of proof is upon the one alleging the homicide to prove by a preponderance of the evidence that it was felonious and intentional. The finding in a criminal prosecution, where the burden of proof is guilt beyond a reasonable doubt, that the slayer is not guilty is not dispositive of the civil action where the burden of proof is by a preponderance of the evidence. *See Ford,* 307 Md. at 112, 512 A.2d 389. *See also United States v. Burns,* 103 F.Supp. 690, 691 (D.Md.), *aff'd,* 200 F.2d 106 (4th Cir.1952). Likewise, a finding of guilt in the criminal prosecution will not support the application of res judicata. As the court in *Ford* stated:

> The disposition of a criminal cause is not conclusive of the character of the homicide or of the criminal agency of the putative killer in a civil proceeding concerning entitlement to assets of the decedent.... [T]he lack of or result of a criminal proceeding is not res judicata in a subsequent civil action.

307 Md. at 112, 512 A.2d 389. *See also Burns,* 103 F.Supp. at 691–92.

In short, in Maryland a criminal conviction will not support the application of the principle of res judicata in the civil case, even if the issues are the same. *See e.g., Eisenhower v. Baltimore Transit Co.,* 190 Md. 528, 538, 59 A.2d 313 (1948). Indeed, Maryland law does not permit the introduction of evidence of a party's criminal conviction in a subsequent civil action to prove damages occasioned by the offense of which the party was convicted. *Eisenhower,* 190 Md. at 538, 59 A.2d 313. *See also Brooks v. Daley,* 242 Md. 185, 196, 218 A.2d 184 (1966). *But compare* Fed.R.Evid. 803(22). Many courts which adopt the same approach as does Maryland to deny the preclusive effect of a criminal conviction have made an "exception" when, as in this case, a convicted criminal seeks to profit from his or her crime. *See, e.g., Webb v. Voirol,* 773 F.2d 208, 210–212 (8th Cir.1985) (applying Missouri law, a wife who had been convicted of murdering her husband was not allowed to relitigate the murder issue in an interpleader action brought by the insurance company to determine the policy beneficiaries). *See also* 18 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4474 at 753–54 (1981). While persuasive argument may be made to recognize this exception, Maryland has not subscribed to it yet. *Ford,* 307 Md. at 112, 512 A.2d 389.

The Court will not consider Hebb's conviction as resolving the question whether he killed Sonya Hebb feloniously and intentionally. This will not, however, preclude the Court from considering admissions made by him in the criminal proceeding to determine in this action as an independent question whether he killed Sonya Hebb feloniously and intentionally. *See Aetna Casualty & Sur. Co. v. Kuhl*, 296 Md. 446, 455, 463 A.2d 822 (1983).

The record before the Court shows that Hebb and a friend, Scott Shaw, were each involved in the grisly murder of Sonya Hebb. As described by Hebb's testimony, Shaw cut Sonya Hebb's neck with a barber's razor and dragged her bleeding body for 300 yards. Hebb ran after them and when he saw her condition he "got scared." As he testified:

> I didn't know what to do. I had never seen anyone get cut up, or covered with blood. So, I went back to the car, and I was trying to think of something to do, but I couldn't move. And that's when Scott Shaw, he dragged her back to the car, and he put her in the trunk and left. But while he was leaving, he had left the gun on the top of the hood of the trunk of the car.
>
> And I picked up the gun, and I was there, and I didn't know what to do. She was suffocating on her own blood, and she was choking. So, I stopped her from suffering.

He continued further in his testimony:

> Q. And you in fact killed her, didn't you?
> A. Yes.
> Q. Is there anybody responsible for that but you?
> A. No.
>
> \* \* \* \* \* \*
>
> Q. Why didn't you shoot Mr. Shaw?
> A. Because, after I had taken my wife's life, I never even thought about Mr. Shaw. I just thought about what I had done.

The transcript later refers to a letter written by Hebb in which he describes how he and Shaw cut the throat of Sonya Hebb and how Hebb shot her in the back of the head.

Hebb does not now controvert these admissions. His only response is that the evidence was insufficient to convict him and that when there is a doubt about whether the death was felonious or intentional, it should not be resolved against the person designated a beneficiary to deprive him of the policy proceeds.

The Court finds Hebb's response to be totally conclusory and unsupported by any evidence. The Court can reach but one conclusion on this record. William Hebb feloniously and intentionally killed his wife, and by virtue of the slayer's rule applicable in Maryland, he cannot and should not participate in her estate or in the proceeds of a life insurance policy that insured her.

His only other response to Theresa Johnson's claim to the insurance proceeds is that the *Ford* case applied only to a will and that therefore the slayer's rule does not apply to the proceeds of life insurance policies. The Court concludes that this contention is without merit. On the contrary, the court in *Ford* stated:

> The Court in *Price* [which adopted the slayer's rule] indicated that "the equitable maxims of the common law" which it followed in answering the question before it, would apply not only in the case of intestacy but equally to benefits by way of wills and life insurance policies. 164 Md. at 516, 165 A. 470. *Chase v. Jenifer*, 219 Md. 564, 150 A.2d 251, involved the proceeds of a life insurance policy.

307 Md. at 109, 512 A.2d 389.

The Court will therefore deny Hebb any proceeds from the life insurance policy payable on the death of his wife and will grant Theresa Johnson's motion for summary judgment.

Accordingly, for the reasons given in this Opinion, it is hereby ORDERED this 5th day of February, 1990, by the United States District Court for the District of Maryland, that:

1. The motion of Theresa Johnson for summary judgment is granted, and judg-

**1528**

ment will be entered in favor of Theresa E. Johnson and against William Andrew Hebb, Jr. for the proceeds of the insurance policy issued on the life of Sonya Hebb.

2. The Clerk is directed to withdraw all court costs from the amounts deposited in the registry of the Court and to pay the balance thereof to the plaintiff Theresa E. Johnson. Upon payment of all amounts received into the registry of the Court in this case, the Clerk shall close this case.